UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **JASON BEARD,** *Plaintiff,* v. **EXPERIAN INFORMATION SOLUTIONS, INC.,** *Defendant.* | Case Number: **JURY TRIAL DEMANDED** |

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Jason Beard** ("**Mr. Beard**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Experian Information Solutions, Inc.** ("**Experian**" or "**Defendant**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Beard against Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Experian is subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by Experian within Pasco County, Florida, which is in the Middle District of Florida.

## PARTIES

5. **Mr. Beard** is a natural person who at all times relevant has resided in Pasco County, Florida.

6. Mr. Beard is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. **Experian** is an Ohio corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Experian is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 32301.

9. Experian is a nationwide Consumer Reporting Agency ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, including specifically mail and telephone communications.

## FACTUAL ALLEGATIONS

10. In June 2019 Mr. Beard obtained a credit card purportedly issued by First Savings Bank (the "Account," First Savings Bank hereafter referred to as "FSB").

11. Beginning July 2019 through the present date, the servicer of the Account has reported the Account monthly to each of Experian, Equifax, and Trans Union, the "Big Three" consumer reporting agencies.

12. From July 2019 through April 2021, Experian incorporated the data furnished to it by the servicer of the Account in reports sold regarding Mr. Beard under a single tradeline (the "First FSB Tradeline").

13. In April 2021, First Savings Bank charged off the Account.

14. Experian began reporting a second tradeline for the Account that same month (the "Second FSB Tradeline").

15. As of June 17, 2023, the First FSB Tradeline indicated that Mr. Beard opened the Account in June 2019, that the account was charged off, with $419 written off, and that the account bore partial account number 543360180293. **See Plaintiff's Exhibit A.**

16. As of June 17, 2023, the Second FSB Tradeline indicated that Mr. Beard opened the Account in June 2019, that the account was charged off, with $419 written off, and that the account bore partial account number 543360180293. **Id.**

17. Mr. Beard did not have two credit cards issued by FSB in June 2019, both of which were charged off in the amount of $419.

18. Indeed, the First and Second FSB Tradelines represent the same underlying account.

19. As the reported account information for both tradelines was almost entirely identical, Experian knew, or should have known, that the data furnished to it by the service of the Account related to a single underlying account.

20. Despite the obvious duplication of the underlying account information, from April 2021, Experian has reported both FSB tradelines in reports sold regarding Mr. Beard.

21. Experian's inclusion of the duplicate tradelines caused significant harm to Mr. Beard's credit scores, as a higher number of charged-off accounts on a consumer's report adversely affects the consumer's scores.

22. Likewise, Experian's inclusion of the duplicate tradelines increased the amount of debt reported, adversely affecting Mr. Beard's debt-to-income ratios.

23. Experian, as a CRA, has a legal duty to invoke procedures to assure the maximum possible accuracy of consumer reports sold. See 15 U.S.C. § 1681e(b).

24. Experian's duplication of reported account information is inherently unreasonable.

25. Experian is well aware of the flaws in its software which frequently fail to catch and remove repeat tradelines from appearing on consumers' credit report.

26. Experian has been sued in the past for selling consumer reports containing duplicate tradelines.

27. Experian's policies contrast significantly with those employed by Equifax and Trans Union, the other two of the "Big Three" CRAs, which reported only one instance of the Account.

28. Moreover, the Second FSB Tradeline reported by Experian had been "last reported" by Crescent Bank in April 2021.

29. Experian requires its data furnishers to adhere to Metro 2 standards for credit reporting.

30. Metro 2 is a uniform set of reporting standards and a lingua franca utilized by large nationwide CRAs like Equifax, Experian, Trans Union, and Innovis for consumer reporting.

31. Metro 2 standards require data furnishers to make monthly updates to balances, payment histories, etc. for any account that does not have a $0 balance.

32. Experian therefore included the Second FSB Tradeline in reports sold regarding Mr. Beard which were woefully non-compliant with Metro 2 standards, as the information had not been updated in over two years.

33. Reporting information on an credit card which has not been updated in two years is an inherently unreasonable procedure to assure the maximum possible accuracy of a report.

34. Indeed, in January 2023, Mr. Beard visited Jim Brown Chevrolet, seeking to purchase and finance an automobile.

35. Jim Brown Chevrolet purchased a consumer report regarding Mr. Beard from Experian.

36. On information and belief, Experian's consumer report to Jim Brown Chevrolet included both tradelines.

37. Experian thus failed to use reasonable procedures when preparing the credit report sold to Jim Brown Chevrolet.

38. As a result of Experian's failure to prepare reports utilizing procedures to assure maximum possible accuracy, Mr. Beard could not proceed with financing an automobile.

39. Mr. Beard again sought to finance an automobile through applications with United Auto Credit Company and Wesley Chapel Honda in May and June 2023, respectively.

40. United Auto Credit Company and Wesley Chapel Honda both obtained consumer reports regarding Mr. Beard from Experian.

41. On information and belief, Experian's consumer reports to United Auto Credit Company and Wesley Chapel Honda included the duplicate tradelines.

42. Experian thus failed to use reasonable procedures when preparing the credit reports sold to United Auto Credit Company and Wesley Chapel Honda.

43. Records from Experian suggest that Experian has sold *dozens* of consumer reports to Mr. Beard's creditors and potential creditors in the last two years.

44. On information and belief, each of these reports contained both FSB Tradelines.

45. Each of these reports was therefore inaccurate.

46. Experian failed to use reasonable procedures when preparing each of these credit reports.

### Mr. Beard's Dispute

47. In October 2023, Mr. Beard disputed the Second FSB Tradeline to Experian, indicating that the tradeline was a duplicate and should not report.

48. Experian, upon receipt of Mr. Beard's dispute, sent FSB an Automated Consumer Dispute Verification Request ("ACDV") form through an online platform known as e-OSCAR, asking FSB to make a reasonable investigation into the dispute.

49. FSB responded to the ACDV, verifying the reported information as accurate.

50. Experian, rather than conduct its own investigation, relied on the ACDV response from FSB.

51. As a result, Experian continued to report the Second FSB Tradeline.

52. Experian, as a CRA, was required to conduct its own reinvestigation into Mr. Beard's dispute.

53. Experian failed to conduct a reasonable reinvestigation into Mr. Beard's October 2023 dispute, as any reasonable reinvestigation would have concluded that the Second FSB Tradeline should be deleted, as the same underlying account was reporting already via the First FSB Tradeline.

54. In addition, following Mr. Beard's dispute, Experian updated the Second FSB Tradeline to remove all of the relevant data related to the account. **See Plaintiff's Exhibit B.**

55. Specifically, Experian updated the Second FSB Tradeline so that the account status, date of status, date first reported, and balance all indicate "no status" or "not reported."

56. Experian's systems also erroneously inserted a Compliance Condition Code ("CCC") of "XF," or "account in dispute under Fair Credit Billing Act" even though this CCC was not inserted or reported by the data furnisher.

57. The Fair Credit Billing Act ("FCBA") was enacted in 1974 as an amendment to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*

58. The purpose of the FCBA is to protect consumers from unfair billing practices and to provide a mechanism for addressing billing errors in "open end" credit accounts, i.e., credit card and charge card accounts.

59. Disputes made under the FCBA by consumers typically involve fraudulent or unauthorized purchases, or authorized charges in which product or service purchased was not as described.

60. Mr. Beard never informed Experian that he disputed the FSB account under the FCBA.

61. Mr. Beard, upon learning in January 2024 that Experian was (a) still reporting the Second FSB Tradeline, and (b) was reporting it without any meaningful data and with an FCBA dispute, attempted to dispute the Second FSB Tradeline a second time.

62. Experian deems repeat disputes frivolous, and will not process the dispute or conduct an reinvestigation beyond immediately deeming the dispute meritless.

63. When Mr. Beard attempted to dispute the Second FSB Tradeline a second time, Experian deemed his dispute meritless and conducted no investigation beyond noting that he had previously disputed the same tradeline.

64. The FCBA dispute comment, lack of reported status, date of status, and date first reported, were all no information relevant to Mr. Beard's second dispute.

65. Experian therefore failed to conduct a reasonable reinvestigation into Mr. Beard's January 2024 dispute, as any reasonable reinvestigation would have concluded that the Second FSB Tradeline should be deleted, as the same underlying account was reporting already via the First FSB Tradeline, and that even should it report, the tradeline contained inaccuracies, such as the FCBA dispute comment and no status, date of status, or date first reported.

66. As a result of Experian's conduct, Mr. Beard has been unable to obtain financing for a new automobile, as both Wesley Chapel Honda and United Auto Credit Company denied his applications for an auto loan based in part on consumer reported obtained by Experian.

67. Mr. Beard has also suffered severe emotional distress, embarrassment, damage to his reputation and an inability to apply for new credit.

68. Mr. Beard has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C § 1681e(b)

69. Mr. Beard adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

70. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Beard when Experian sold consumer reports regarding Mr. Beard which contained the duplicate FSB Tradelines.

71. Experian has been sued in the past for selling reports with duplicate tradelines and is well aware that its systems frequently duplicate reported account information and report one account across multiple tradelines.

72. Experian's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Mr. Beard.

73. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Beard's actual damages and statutory damages of $1,000 per violation, reasonable attorney's fees, and costs.

74. Experian's willful, repeated conduct warrants an award of punitive damages.

**WHEREFORE,** Mr. Beard respectfully requests this Honorable Court enter judgment against Experian for:

    a.    The greater of Mr. Beard's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C § 1681e(b)

75. Mr. Beard adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

76. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Beard when Experian sold consumer reports regarding Mr. Beard which contained the duplicate FSB Tradelines.

77. Experian had a legal duty to Mr. Beard to use reasonable procedures to ensure the maximum possible accuracy of his consumer reports.

78. Experian breached this duty when it sold reports which included both iterations of the FSB Tradeline.

79. Experian's conduct was therefore negligent.

80. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Beard's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Beard respectfully requests this Honorable Court enter judgment against Experian for:

a. Mr. Beard's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT III
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C § 1681i(a)(1)(A)

81. Mr. Beard adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

82. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Mr. Beard's disputes of the Second FSB Tradeline in October 2023 and January 2024, as any reasonable investigation would have resulted in the tradeline's deletion, or at a minimum with the January 2024 dispute, correction of the reported data to include a status and proper compliance condition code.

83. Experian has been sued in the past for failing to conduct reasonable investigations and for preventing meritorious disputes due to deeming them repeat, frivolous disputes.

84. Experian is thus aware that its reliance on ACDVs is unreasonable and could reasonably be foreseen to cause harm to Mr. Beard.

85. Experian's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes.

86. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Beard's actual damages and statutory damages of $1,000 per violation, reasonable attorney's fees, and costs.

87. Experian's willful, repeated conduct warrants an award of punitive damages.

**WHEREFORE,** Mr. Beard respectfully requests this Honorable Court enter judgment against Experian for:

   a. The greater of Mr. Beard's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

   d. Such other relief that this Court deems just and proper.

## COUNT IV
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C § 1681i(a)(1)(A)

88. Mr. Beard adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

89. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Mr. Beard's disputes of the Second FSB Tradeline in

October 2023 and January 2024, as any reasonable investigation would have resulted in the tradeline's deletion, or at a minimum with the January 2024 dispute, correction of the reported data to include a status and proper compliance condition code.

90. Experian had a legal duty to conduct a reasonable investigation into Mr. Beard's disputes.

91. Experian breached this duty when it failed to properly investigate Mr. Beard's disputes.

92. Experian's conduct was therefore negligent.

93. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Beard's actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Beard respectfully requests this Honorable Court enter judgment against Experian for:

    a. Mr. Beard's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Beard hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **January 5, 2024**, by:

> **SERAPH LEGAL, P. A.**
>
> /s/ *Bryan J. Geiger*
> Bryan J. Geiger, Esq.
> Florida Bar No.: 119168
> BGeiger@seraphlegal.com
> 2124 W. Kennedy Blvd., Ste. A
> Tampa, FL 33606
> Tel: 813-567-1230
> Fax: 855-500-0705
> *Attorneys for Plaintiff*

## EXHIBIT LIST

A    Mr. Beard's Experian's Consumer Disclosure, June 17, 2023, Excerpt
A    Mr. Beard's Experian's Consumer Disclosure, January 2, 2024, Excerpt